IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TOPCON AGRICULTURE AMERICAS, LLC,

                                  Plaintiff,

v.

COTE AG TECHNOLOGIES, LLC,

                                  Defendant.

OPINION and ORDER

18-cv-789-jdp

---

Plaintiff Topcon Agriculture Americas, LLC alleges that defendant Cote Ag Technologies, LLC, breached a contract by refusing to repay a $250,000 loan and failing to reimburse Topcon for payments it made to a third-party firm. Cote Ag moves to dismiss the case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Dkt. 10. Its central argument is that it lacks sufficient contacts with Wisconsin to subject it to jurisdiction here. The court will deny Cote Ag's motion.

BACKGROUND

The court draws the following facts from the allegations in Topcon's complaint, Dkt. 2, as well as the parties' evidentiary submissions, Dkt. 12 and Dkts. 15–18, which the court may consider in deciding a motion to dismiss on jurisdictional grounds. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). At this stage of the case, Topcon need only "make a *prima facie* showing of jurisdictional facts." *Id.* at 672. The court must resolve any factual disputes in favor of the plaintiff. *Id.*

Topcon is a Wisconsin limited liability company with a principal place of business in Fort Atkinson, Wisconsin. Its sole member is Topcon Positioning Systems, Inc., a Delaware

corporation. It provides "field and farm management solutions to customers in the agricultural industry." Dkt. 2, ¶ 6.

Cote Ag is an Iowa limited liability company with its principal place of business in West Des Moines, Iowa. Its members are citizens of Iowa, Nebraska, and Minnesota. Cote Ag is an engineering, design, and development company that focuses on farming equipment.

In August of 2016, Mike Gomes, a Topcon executive, traveled to Iowa for an agricultural trade show to exhibit Topcon's technologies at a trade booth. Jeff Hallgren, Cote Ag's president and CEO, approached Topcon's booth and talked to Gomes about technology that Cote Ag was developing. A few weeks later, Gomes visited Cote Ag's facilities in West Des Moines at Hallgren's invitation. During that visit, Gomes viewed a demonstration of Cote Ag's technology, and he and Hallgren discussed the possibility of a partnership between the companies in developing a new seed-metering technology. Gomes proceeded to connect Hallgren with additional Topcon executives, some of whom also traveled to Iowa at Hallgren's invitation to see demonstrations of Cote Ag's technology. Hallgren offered Cote Ag's services in developing and licensing the new technology.

Over the next year, the parties engaged in telephonic and in-person negotiations. All of the in-person negotiating occurred in Iowa, and most of the Topcon representatives who participated in the negotiations were from California, the United Kingdom, Australia, and Italy. But Brian Sorbe, a Wisconsin-based Topcon executive, played a role in the negotiations, albeit a minor one.

In October 2017, Topcon's California-based lawyer drafted a letter of intent, which committed the parties to exclusive negotiations on agreements to develop and sell a seed-metering technology. *See* Dkt. 15-1. The letter provided that, as consideration for exclusive

2

negotiations, Topcon would advance two $250,000 disbursements to Cote Ag. The first $250,000 was a fee in consideration for Cote Ag's exclusivity, whereas the second $250,000 was a loan by Topcon to Cote Ag. The letter gave both parties the right to terminate negotiations at their own discretion, but provided that Cote Ag must repay the $250,000 loan if the parties' negotiations failed to yield definitive agreements to develop and distribute the technology in question. On October 9, 2017, Sorbe executed the letter of intent on behalf of Topcon, and Hallgren executed it on behalf of Cote Ag.

On October 13, 2017, Topcon wired the initial $250,000 installment to Cote Ag, which it facilitated from its office in Wisconsin. On October 31, 2017, TopCon wired the second $250,000 installment, and Cote Ag began work on the seed-metering technology. Topcon also retained a Wisconsin-based product design and engineering firm, i3 Product Development, Inc., to assist Cote Ag with the proof of concept and various engineering and design challenges. The parties agreed that Topcon would pay i3 Development initially, but that Cote Ag would reimburse Topcon for those expenses later. During the development process, engineers from Cote Ag regularly consulted with the development team at i3 Development. Cote Ag engineers also participated in weekly design review meetings and status updates with representatives from TopCon and i3 Development, which took place over phone or email.

It became clear that the parties would not be able to develop the definitive agreements by December 31, 2017, the end of the term specified by the letter of intent. The parties extended the exclusive negotiation period through February 28, 2018. *See* Dkt. 15-2. They later extended the period a second time, through April 30, 2018. As the April 30 deadline approached, Topcon prepared a third amendment to extend the negotiation period, but Cote Ag refused to sign it. As a result, the negotiations would no longer be exclusive after April 30,

but they continued nonetheless. On May 9, 2018, Hallgren and other Cote Ag executives visited Topcon's principal offices in Fort Atkinson, Wisconsin. During that visit, Hallgren met with Topcon's president, Kevin Klubertanz, and its CEO, Fabio Isaia. The Cote Ag team brought an updated version of their demo technology and the parties had additional discussions about a development agreement.

Topcon terminated the parties' negotiations approximately one month later. The letter of intent required Cote Ag to repay Topcon's second $250,000 loan, but Hallgren refused to do so, asserting that "events before and after the signing of the [letter of intent] supersede the non-binding aspect of [its] terms." Dkt. 15-3, at 1. Topcon filed this lawsuit a few months later. The court has subject matter jurisdiction over Topcon's claims under 28 U.S.C. § 1332 because there is diversity of citizenship between Topcon and Cote Ag and the amount in controversy is more than $75,000.

## ANALYSIS

Cote Ag moves to dismiss the case for lack of personal jurisdiction.

Federal courts may exercise personal jurisdiction where a party would be amenable to suit under (1) the laws of the state where the federal court sits; and (2) where jurisdiction is consistent with the requirements of due process. *KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). If a defendant has such systematic and continuous contact with the forum that it might be regarded as at home there, the court can exercise general jurisdiction, meaning that the defendant would be subject to personal jurisdiction in that court for any claim. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). More limited contacts might support specific jurisdiction, meaning that a defendant would be subject to personal

jurisdiction for claims related to its forum contacts. *Id.* Topcon does not contend that Cote Ag is subject to general jurisdiction in Wisconsin, so the court considers only whether the exercise of specific jurisdiction is authorized under Wisconsin law and constitutional due process requirements.

Wisconsin's long-arm statute, Wis. Stat. § 801.05, has been interpreted to confer "jurisdiction 'to the fullest extent allowed under the due process clause.'" *Felland*, 682 F.3d at 678 (quoting *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990)). Topcon contends that this court has personal jurisdiction over Cote Ag under section 801.05(6)(c), which confers jurisdiction over claims seeking that "the defendant return, restore, or account to the plaintiff for any asset or thing of value which was within this state at the time the defendant acquired possession or control over it." Here, Topcon seeks repayment of the money it lent Cote Ag—a loan that Topcon arranged from its offices in Wisconsin. Cote Ag effectively concedes that its acceptance of this money brings it within the ambit of the long-arm statute. *See* Dkt. 19, at 2. So the court concludes that the statutory requirement is met and turns to the constitutional inquiry.

The Seventh Circuit has distilled the due process requirements for specific jurisdiction to a three-prong inquiry: (1) the defendant must have purposely availed himself of the privilege of conducting business in the forum state or purposely directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Felland*, 682 F.3d at 673. The parties' dispute focuses entirely on whether Cote Ag had "sufficient minimum contacts with [Wisconsin] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash., Office of*

5

*Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The minimum-contacts question chiefly implicates the first and third prongs of the Seventh Circuit's specific jurisdiction inquiry, so that is where the court will focus its analysis.

## A. Conduct purposefully directed at Wisconsin

Personal jurisdiction must be based "on contacts that demonstrate a real relationship with the state with respect to the transaction at issue," and not simply "'random, fortuitous, or attenuated contacts." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In other words, a defendant's contacts with the forum state "must be substantial enough to make it reasonable for a defendant to anticipate that he could be haled into court there." *Id.* at 492. As the parties recognize, simply "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum" to permit the exercise of personal jurisdiction. *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003). In breach-of-contract cases, courts must conduct "a context-sensitive analysis of the contract, examining 'prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other.'" *N. Grain Mktg.*, 743 F.3d at 493 (citing *Purdue Res.*, 338 F.3d at 781).

Here, Cote Ag makes a good case that in the early days of its association with Topcon, it did not have substantial contacts with Wisconsin: the parties first encountered each other in Iowa, much of their ensuing negotiations involved Topcon employees not based in Wisconsin, and the actual technology development that Cote Ag contracted to perform was all slated to take place in Iowa. In Cote Ag's view, this is the type of business relationship that the Seventh

Circuit has deemed insufficient for specific jurisdiction in cases like *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, and *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979). In *Northern Grain*, the Seventh Circuit determined that the defendant, a Wisconsin farmer sued by an Illinois grain buyer, was not subject to personal jurisdiction in Illinois because he had only once set foot there, he hadn't actively marketed his grain to Illinois companies, and he had conducted all of his contract-related activities in Wisconsin. Likewise, in *Lakeside*, the Seventh Circuit held that a Wisconsin court lacked personal jurisdiction over a West Virginia-based defendant whose contacts with Wisconsin were limited to ordering a product from a Wisconsin-based company without having set foot in Wisconsin.

But *Lakeside* is viewed as "marking something of a borderline for a no-jurisdiction finding: 'When a defendant's contacts with the forum state have been as—if not more—limited than those of the defendant in *Lakeside*, [the Seventh Circuit] has denied personal jurisdiction." *N. Grain Mktg.*, 743 F.3d at 494 (quoting *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1200 (7th Cir. 1985)). And when a defendant's forum-state contacts are more extensive than in *Lakeside*, the exercise of specific jurisdiction is generally considered proper. Here, Cote Ag's contacts with Wisconsin are more extensive than in *Lakeside*, for at least three reasons.

First, Topcon and Cote Ag spent an extended period of time negotiating and renegotiating the letter of intent—an endeavor clearly aimed at creating a prolonged, open-ended business relationship. This is precisely the kind of relationship most susceptible to the exercise of specific jurisdiction. *See Daniel J. Hartwig Assocs.*, 913 F.2d at 1219 ("[W]here a defendant has created 'continuing obligations' between himself and the residents of the forum, he manifestly avails himself of the privilege of conducting business in that forum."). Second,

7

as the parties negotiated the letter of intent and collaborated on the initial phases of technology development, Cote Ag came into contact with numerous Wisconsin-based individuals. The letter of intent that Cote Ag executed with Topcon was counter-signed by Brian Sorbe, a Wisconsin-based executive. Cote Ag accepted two $250,000 payments from Topcon, which Topcon arranged from its headquarters in Wisconsin. And Cote Ag employees participated in weekly meetings and status updates over phone and email with Topcon personnel and representatives from Topcon's Wisconsin-based development firm, i3 Development. Third, Cote Ag sent Hallgren, its president and CEO, to visit Topcon headquarters in Fort Atkinson, Wisconsin to discuss moving forward with their agreement in May 2018.

Based on this combination of factors, the court is persuaded that Cote Ag's contacts with Wisconsin were substantial enough to satisfy the requirement that conduct be purposefully directed at Wisconsin. Cote Ag concedes that this case arises from its contacts with Wisconsin.

**B. Traditional notions of fair play and substantial justice**

The only remaining question is whether the exercise of personal jurisdiction over Cote Ag would offend traditional notions of fair play and substantial justice. The burden is on the defendant to make a "compelling case" that exercising jurisdiction over it would be unreasonable. *Felland*, 682 F.3d at 677. Courts consider the following factors: (1) "the burden on the defendant"; (2) "the forum state's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *Burger King*, 471 U.S. at 477).

Cote Ag does not invoke these factors, let alone explain why they might militate against exercising specific personal jurisdiction here. The court concludes that none of them do. Cote Ag should not be especially burdened by having to litigate this case from Iowa, and both Topcon and the judicial system have an interest in resolving the case as efficiently as possible.

All the requirements of due process are met, so the court will deny Cote Ag's motion to dismiss.

ORDER

IT IS ORDERED that defendant Topcon Agriculture Americas, LLC's motion to dismiss, Dkt. 10, is DENIED.

Entered June 12, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge